UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
at PIKEVILLE

CIVIL ACTION NO. 7:10-cv-062-KKC

COMMUNITY TRUST BANCORP., INC., PLAINTIFF,

v. **OPINION AND ORDER**

COMMUNITY TRUST FINANCIAL CORPORATION,
COMMUNITY TRUST BANK, and
COMMUNITY TRUST BANK OF TEXAS, DEFENDANTS.

\* \* \* \* \* \* \* \*

This matter is before the Court on the Motion to Dismiss filed by the Defendants [DE 15]. The primary issue raised by the motion is whether the Defendants' provision of online banking services to Kentucky residents subjects them to personal jurisdiction in this Court. For the following reason, the Court finds that it does.

### I. INTRODUCTION.

The Plaintiff in this action is Community Trust Bancorp. Inc., a Kentucky corporation. It has provided banking and financial services since 1903. Since at least since 1995, the Plaintiff has continuously used the mark COMMUNITY TRUST to promote its banking and financial services. Since 1998, it has operated a website using the domain name ctbi.com. Its website allows customers to conduct online banking, bill pay, and other financial transactions over the internet.

The Defendants are Community Trust Bank of Texas, which is a Texas corporation, and Community Trust Financial Corporation and Community Trust Bank, both of which are Louisiana corporations. Community Trust Bank and Community Trust Bank of Texas are wholly-owned subsidiaries of Community Trust Financial Corporation.

Like the Plaintiffs, the Defendants provide banking and financial services. Defendants use the marks COMMUNITY TRUST and COMMUNITY TRUST BANK and the trade names Community Trust Financial Corporation, Community Trust Bank, and Community Trust Bank of Texas. The Defendants also operate a website using the domain name ctbonline.com and the website displays the words "Community Trust."

The Plaintiff asserts that the Defendants' use of the COMMUNITY TRUST mark and related marks and trade names is likely to confuse consumers into believing that the Plaintiff is the operator of the Defendants' website or that the Plaintiff is affiliated with the Defendants' services. The Plaintiff asserts that the Defendants' use of these marks constitutes trademark infringement in violation of federal law, 15 U.S.C. § 1114(1) (the "Lanham Act"), and state law, KRS § 365.601. The Plaintiff also asserts that the Defendants' use of the marks constitutes false designation of origin under 15 U.S.C. § 1125(a). The Plaintiffs also move under 15 U.S.C. § 1119 for an order canceling the Defendants' U.S. Service Mark Registration for the mark COMMUNITY TRUST BANK.

The Defendants move to dismiss this action under Federal Rule of Civil Procedure 12(b)(2) arguing that this Court has no personal jurisdiction over them. Alternatively, they move to transfer this action under Rule 12(b)(3) arguing that this Court is not the proper venue. The Defendants further move under Rule 12(b)(6) to dismiss the Plaintiff's claim under KRS § 365.601 for failure to state a claim.

**II.     PERSONAL JURISDICTION.**

**A.     STANDARD ON 12(b)(2) MOTION.**

Neither party has asked the Court for discovery on the jurisdictional issue or for an evidentiary hearing. Thus, the Court will decide this motion on the basis of the pleadings and the affidavits submitted by the parties. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991);

*See also Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).

At this stage, the Plaintiff must only establish a prima facie case for jurisdiction to prevent its claim from being dismissed. *Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147, 149 (6th Cir. 1997). A prima facie showing means that the Plaintiff need only present enough facts to avoid a motion to dismiss. *Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir. 1980)(quoting *Data Disc, Inc. v. Systems Technology, Associates, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)).

In determining whether the Plaintiff has met this burden, the court must consider the pleadings and affidavits in a light most favorable to the Plaintiff. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). The court "does not weigh the controverting assertions of the party seeking dismissal." *Theunissen*, 935 F.2d at 1459 (citing *Serras*, 875 F.2d at 1214). A court is not required, however, to "ignore undisputed factual representations of the defendant which are consistent with the representations of the plaintiff." *Kerry Steel*, 106 F.3d at 153.

**B.     ANALYSIS.**

When determining whether personal jurisdiction exists over a defendant, "a federal court must apply the law of the state in which it sits, subject to constitutional limitations." *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir.1994). "[T]he defendant must be amenable to suit under the forum state's long-arm statute and the due process requirements of the Constitution must be met." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)(citation omitted). "The Kentucky long-arm statute has been understood to reach the limit permitted by the Constitution." *Tobin v. Astra Pharmaceutical Products, Inc.*, 993 F.2d 528, 542 (6th Cir. 1993). Thus the single issue presented on a motion to dismiss for lack of personal jurisdiction is whether the jurisdiction sought by the plaintiffs is within the requirements of due process. *Id.* at 543; *National Can Corp. v. K Beverage Co.*, 674 F.2d 1134, 1136 (6th Cir. 1982).

"[T]he Court's exercise of jurisdiction comports with due process when the defendant has sufficient minimal contacts such that traditional notions of fair play and substantial justice are not offended." *Intera Corp. v. Henderson*, 428 F.3d 605, 615-16 (6th Cir.2005)(quotations and citation omitted).

The minimum contacts requirement may be satisfied by a showing of either general jurisdiction or specific jurisdiction. *Fortis Corporate Ins. v. Viken Ship Management*, 450 F.3d 214, 218 (6th Cir.2006). General jurisdiction over a nonresident requires a showing of continuous and systematic contacts with the forum state. *Aristech Chemical Intern. Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627 (6th Cir.1998).

The Plaintiff does not argue that this Court has general jurisdiction over the Defendants. The following criteria are used to determine if this Court has specific personal jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Mach. Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

On the first element – purposeful availment – the question is whether the Defendants themselves took actions in Kentucky that create a "substantial connection" with the state so that they "should reasonably anticipate being haled into court there." *Neogen v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002)(citations and quotations omitted). This "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Id*. (citations and quotations omitted). The Defendants have no officers, directors, employees, agents or any physical presence in Kentucky.

Their branch offices are located only in Texas, Louisiana, and Mississippi and their advertising and marketing campaigns are directed solely at residents of those states.

The Defendants do have Kentucky customers. Nine of the Defendants' 69,000 accounts, representing six different customers, have Kentucky addresses associated with them. However, each of the accounts with a Kentucky address was originally established by a customer physically located in Louisiana, Texas or Mississippi. Indeed, in order to establish an account with the Defendants, it is necessary to visit one of their branch offices in Louisiana, Texas, or Mississippi.

For all but one of the accounts with a Kentucky address, the customer moved to Kentucky after opening the account. The remaining account was set up by one of the Defendants' employees in Mississippi for that employee's child who had already moved to Kentucky to attend school.

If the existence of these accounts with Kentucky addresses were the Defendants' only contacts with Kentucky, then this Court could not exercise jurisdiction over the Defendants. The fact that some of the Defendants' customers moved to Kentucky after establishing their accounts is not the result of the Defendants' intentional activities. Instead, these accounts are the result of the kind of random, fortuitous and attenuated contacts and unilateral activity that cannot be a basis for personal jurisdiction.

However, the mere existence of Kentucky accounts is not the Defendants' only contacts with Kentucky residents. There are also four Kentucky residents who have signed up for online banking through the Defendants' website. As to whether a website can establish jurisdiction, the Sixth Circuit has held that "[a] defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Neogen*, 282 F.3d at 890. (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997)).

The *Zippo* case cited by the Sixth Circuit in *Neogen* has been called "[t]he seminal authority for evaluating the extent to which Internet contacts may establish personal jurisdiction." *Capitol Federal Savings Bank v. Eastern Bank Corporation*, 493 F.Supp.2d 1150, 1159 (D. Kan. 2007). It established a "sliding scale" for evaluating whether a defendant's website subjects it to personal jurisdiction in the plaintiff's chosen forum. At one end of the scale is a website through which the defendant enters into contracts with residents of the forum state that involve "the knowing and repeated transmission of computer files over the Internet." Such a website clearly subjects the defendant to personal jurisdiction in the forum. *Zippo*, 952 F.Supp. at 1124.

At the other end of the scale are "passive" websites where the defendant "has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions." *Id.* "A passive Webvsite that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction." *Id*.

Between the two extremes is the "middle ground" of "interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Id*.

In this case, individuals who have established bank accounts at the Defendants' branch offices can access their accounts online by obtaining a password through the website. In order to obtain a password, each customer must fill out an application indicating his address. [DE 20, Reply, Ex. 1, Kendrick Aff. Ex. 2, Online Banking Registration]. The customer must also agree to the Defendants' Online Service Agreement. Four of the Defendants' six customers with Kentucky addresses have obtained such passwords. All four of these Defendants had Kentucky addresses at the time they obtained the passwords. [DE 20, Reply, Ex. 1, Kendrick Aff. Ex. 1, Accounts with

Kentucky Addresses].

In *Neogen*, the Sixth Circuit stated that "[t]he granting of passwords to Michigan residents as part of a contract for [the defendant's] services is an interactive usage showing that [the defendant] has intentionally reached out to Michigan customers and enabled them to use [the defendant's] services from Michigan." *Id*. at 890-91.

In that case, the Sixth Circuit expressly declined to decide the "close question" of whether the website at issue would alone subject the defendant to personal jurisdiction in Michigan. *Id*. at 891. This was because the defendant had 14 yearly contracts with Michigan customers and the evidence showed that the defendant expected a certain amount of business in Michigan each year. *Id*. The fact that the defendant expected to conduct a "given level of business year after year" in Michigan showed the defendant's "intent to maintain 'continuing relationships and obligations' in Michigan," *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985), "such that its activities there are 'continuous and systematic.'" *Int'l Shoe*, 326 U.S. at 317.

In this case, when the Defendants sent passwords to Kentucky residents, this was intentional activity to permit Kentucky residents to continue to maintain accounts in the Defendants' banks and to use the Defendants' online services from Kentucky. The Defendants' sending of the passwords was not an "isolated" or "one shot" transaction as was the case in *Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147, 151 (6th Cir. 1997). The Defendants sent passwords to four Kentucky residents and they did it knowing and intending that the recipients would maintain their account in the Defendants' banks and continuously and systematically access those accounts to perform such functions as viewing their balance and paying bills.

In this way, this case differs from *Capitol Federal Savings Bank v. Eastern Bank Corp.*, 493 F.Supp.2d 1150 (D. Kan. 2007) which the Defendants cite. That case addressed the issue of personal

7

jurisdiction of a Kansas court over a bank which had offices and branches only in Massachusetts. Similar to this case, some Kansas residents had accounts with the bank. The court found that the online banking services did not constitute contact with the forum state for jurisdictional purposes. However, there was no evidence that any Kansas customer had actually signed up for the online banking services. *Id*. at 1162.

The court recognized that the provision of online banking services "could involve the exchange of information sufficient to render the exercise of jurisdiction constitutional," but found that, because there was no evidence that any Kansas customers actually received the services, the plaintiff bank had failed to establish "a nexus between the online banking service offered by [the defendant bank] and any of its Kansas customers." *Id*. In this case, the Plaintiff has established that nexus.

The Defendants point out that the number of Kentucky residents with accounts at the bank is a small percentage of the Defendants' 69,000 total accounts. The number of Kentucky residents who have received passwords to conduct online banking from Kentucky is even smaller. However, what matters is not the percentage of the business but whether "the absolute amount of business conducted by [the defendant] in [the forum state] represents something more than 'random, fortuitous, or attenuated contacts' with the state." *Neogen*, 282 F.3d at 892 (citing *Burger King*, 471 U.S. at 475). "[E]ven a single contact can be sufficient." *Zippo*, 952 F.Supp. at 1127. "The test has always focused on the 'nature and quality' of the contacts with the forum and not the quantity of those contacts." *Id*.

The passwords enable the Defendants to continuously interact with the Kentucky recipients for years. With these acts, the Defendants reached out beyond Louisiana, Texas, and Mississippi and created "continuing relationships and obligations" with Kentucky residents. *Burger King*, 471 U.S.

8

at 473.

It is true that the Defendants have not promoted their banking services in Kentucky. However, the fact that Kentucky residents continue banking with the Defendants even after moving to Kentucky is not random or fortuitous. The Defendants' act of sending a password to Kentucky residents to permit them to engage in online banking reveals a specific intention to interact with these customers even after they became Kentucky residents. *Neogen*, 282 F.3d at 890.

The Kentucky long-arm statute provides that a court may exercise personal jurisdiction over any person as to a claim arising from the person's "transacting any business in this Commonwealth." KRS § 454.210(2)(a)(1). The Defendants argue that their activities in Kentucky do not constitute "transacting any business" in Kentucky for purposes of the state's long-arm statute. For this argument, the Defendants rely on KRS § 286.2-670.

That statute provides that certain activities by non-Kentucky banks, including loaning money that is secured by a mortgage on real property in Kentucky and maintaining bank accounts in banks authorized to transact a banking business in the state, does not constitute "transacting business" in this state. At least two courts have interpreted the statute to provide that foreign banks cannot be subject to personal jurisdiction in Kentucky for conducting those activities. *Jude v. First National Bank of Williamson*, 259 F.Supp.2d 586, 591 (E.D.Ky. 2003); *Bank of Louisville v. California First Bank*, 641 F.Supp. 59, 61 (W.D. Ky. 1986).

In this case, the Court has determined that the Defendants are subject to this Court's jurisdiction for providing banking services to Kentucky residents other than loaning money secured by a mortgage. Thus, the subsection of KRS § 286.2-670 addressing that activity is immaterial. The Defendants briefly argue that their provision of banking services to Kentucky residents should not be deemed to be "transacting any business" because it constitutes "the maintenance of bank accounts

in banks authorized...to do...a banking business in this state" as provided in subsection 1(i) of under KRS § 286.2-670 . However, this subsection does not exempt the provision of banking services from the definition of transacting business. Instead it provides that a foreign bank shall not be deemed to be transacting business in Kentucky simply because it maintains a bank account in a bank authorized to do business in this state.

Furthermore, even if the Defendants' activities should not be deemed to be "transacting any business" in the state for purposes of the long-arm statute, that statute also provides for personal jurisdiction over a person for "contracting to supply services or goods in this Commonwealth." KRS § 454.210(2)(a)(2). Each Kentucky resident that has signed up for online banking also agreed to the terms of the Defendants' Online Service Agreement.

The next issue is whether the Plaintiff's cause of action arises from the Defendants' activities in Kentucky. This is a "lenient standard." *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002). "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *Id*. (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir.1996)). This factor "requires only 'that the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities.'" *Id*. (quoting *Third Natl. Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1091 (6th Cir.1989)).

The Plaintiff alleges that the Defendants committed trademark violations by using the mark COMMUNITY TRUST on their website. This cause of action has a substantial connection to the Defendants' activities of providing online banking services to Kentucky residents through the Defendants' website.

This case differs from *Capitol Federal* where the court determined that a Massachusetts bank had purposefully availed itself of the privilege of doing business in Kansas when it established

accounts for Kansas residents, 493 F.Supp.2d at 1163, but that the plaintiff bank's trademark infringement claim did not arise out of or relate to the Massachusetts bank's relationship with its Kansas customers. In that case, there was no evidence that any Kansas customer had actually signed up for online banking. Thus, the trademarks appearing on the defendant bank's website were irrelevant. Instead, the contacts between the Massachusetts bank and its Kansas customers were monthly statements mailed to the customers and the trademark at issue did not appear on the statements. *Id*. at 1164. In this case, in contrast, the Defendants provide online banking to Kentucky residents through their website and the website displays the mark at issue.

Finally, the acts of the Defendants must have a substantial enough connection with Kentucky to make the exercise of jurisdiction over the Defendants reasonable. Where there is a finding of purposeful availment and that the cause of action arose from the defendant's contacts with the forum state, an inference arises that this third factor is also met. *CompuServe,* 89 F.3d at 1268. Factors relevant to the reasonableness inquiry include, "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *Id*.

Although the Defendants may be more burdened by defending a lawsuit in Kentucky than in Louisiana, Texas or Mississippi, this state has a legitimate interest in protecting the business interests of its citizens. The Plaintiff has an obvious interest in obtaining relief and, although the states where the Defendants' branches are located may also have an interest, that does not make jurisdiction by this Court unreasonable.

### III. VENUE.

Defendant also seeks dismissal for improper venue pursuant to Fed.R.Civ.P. Rule 12(b)(3). Neither party has addressed which party bears the burden on such a motion. The Sixth Circuit has

not directly addressed this issue and district courts within this circuit have taken different approaches. *See, e.g.*, *Wax v. Stein World, L.L.C.*, No. 1:07CV3253, 2008 WL 2227350 at *1 (N.D.Ohio 2008)("the plaintiff bears the burden of proving that venue is proper"); *Kelly Servs. v. Eidenes*, 530 F.Supp.2d 940, 948 (E.D.Mich.2008)(movant bears the burden of establishing that venue is improper). Other circuit courts have similarly disagreed about whether the burden to establish that venue is proper should be placed on the plaintiff or the movant. *See Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724 (3rd Cir.1982)(assigning the burden to movant); *but see Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir.2005)(assigning the burden of proof to plaintiff).

This Court has taken the position that, because a motion to dismiss for improper venue challenges whether the forum is a fair one for the defendant under the federal venue statute and because improper venue is an affirmative defense, the defendant bears the burden of proving improper venue. *Long John Silver's, Inc. v. Diwa III, Inc.*, 650 F.Supp.2d 612, 631 (E.D.Ky.2009). In this case, the outcome would be the same no matter which party has the burden.

Title 28 U.S.C. § 1391(b) provides in pertinent part that a civil action such as this "wherein jurisdiction is not founded solely on diversity of citizenship may ... be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

In its Complaint, the Plaintiff asserts that this Court is the proper venue under subsection (2) because a substantial part of the acts of infringement or unfair competition occurred here. Courts have found that venue is proper in Lanham Act cases "where the infringing activity occurred," *Nine*

*Pt. Mesa of Nashville, Inc. v. Nine Pt. Mesa of Lexington, Inc.*, 769 F.Supp. 259, 261 (M.D.Tenn.1991), where the "passing off" occurred., *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995), or in the district where "confusion about the origin of [the trademark owner's] product [is] likely to occur." *Antioch Co. v. Pioneer Photo Albums, Inc.*, No. C-3-99-270, 2000 WL 988249, at *6 (S.D.Ohio Mar.13, 2000); *see also IA, Inc. v. Thermacell Techs., Inc.*, 983 F.Supp. 697, 700 (E.D.Mich.1997).

The Plaintiff alleges that the Defendants used the COMMUNITY TRUST mark on their website which is accessible and is accessed by Kentucky residents. Further, the Plaintiff alleges that Kentucky residents, including those in the Eastern District of Kentucky, will likely be confused by the Defendants' use of the mark at issue. Accordingly, this is the proper venue.

**IV.     MOTION TO DISMISS UNDER RULE 12(B)(6).**

The Defendants also move under Rule 12(b)(6) to dismiss the Plaintiff's claim that the Defendants have violated KRS 365.601 which provides:

Subject to the provisions of KRS 365.601, any person who:

(1) Uses, without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of a mark registered under KRS 365.561 to 365.613, or under KRS 365.560 to 365.625 prior to their repeal, in connection with the sale, distribution, offering for sale, or advertising of any goods or services which is likely to cause confusion or mistake or to deceive as to the source or origin of the goods or services; or

(2) Reproduces, makes, counterfeits, copies or colorably imitates any mark and applies the reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles, or advertisements intended to be used upon or in connection with the sale or other distribution in this state of the goods or services;

shall be liable in a civil action by the registrant for any of the remedies provided in KRS 365.603, except that under subsection (2) of this section, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with the intent to cause confusion or mistake or to deceive.

The Defendants argue that the Plaintiff's claim under this statute should be dismissed because the Plaintiff did not plead in its Complaint that it owns any mark registered in Kentucky. In response, the Plaintiff asserts that it owns Kentucky Service Mark Registration Certificate No. 013488.02 for the mark COMMUNITY TRUST. In reply, the Defendants continue to argue that, because the Plaintiffs failed to state in their Complaint that they registered the mark COMMUNITY TRUST in Kentucky, the Plaintiff's claim under KRS 365.601 should be dismissed.

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id* ; *see also Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570)). "Factual allegations must be enough to raise a right to relief above a speculative level, on the assumption that all the allegations in the complaint are true ...." *Twombly*. 550 U.S. at 555-56 (citations omitted). "Facial plausibility" requires the plaintiff to plead facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949.

When considering a Rule 12(b)(6) motion to dismiss, the court must accept the plaintiff's factual allegations as true and draw all reasonable factual inferences in plaintiff's favor. *Total

*Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir.2008).

The Complaint does not contain a specific assertion that Plaintiff owns a mark registered in Kentucky. However, a fair inference can be drawn from the Complaint that Plaintiff owns such a registered mark.

Furthermore, even post-*Twombly*, "[w]hen a motion to dismiss a complaint is granted, courts typically permit the losing party leave to amend." *Brown v. Matauszak*, 2011 WL 285251, at * 6 (6th Cir. January 31, 2011)(quoting *PR Diamonds, Inc., v. Chandler*, 364 F.3d 671, 698 (6th Cir.2004)). The Court will not dismiss the Complaint or order the Plaintiff to amend its Complaint in this case because it finds that ownership of a registered mark in Kentucky is a fair inference. However, to the extent that the Defendants feel a more definite statement of the Complaint is necessary, the Defendants may file a motion to that effect.

V. CONCLUSION.

For all these reasons, the Court hereby ORDERS that the Defendants' Motion to Dismiss [DE 15] is DENIED.

Dated this 17th day of February, 2011.

Signed By:
*Karen K. Caldwell* KKC
United States District Judge